# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DESHAWN BROWN,

        Petitioner,               Case Number: 2:07-CV-11683

v.                                                    HON. LAWRENCE P. ZATKOFF

CINDI CURTIN,

        Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

Petitioner Deshawn Brown is currently incarcerated at the Oaks Correctional Facility in Manistee, Michigan. He has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his convictions for second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

### I. Background

Petitioner's convictions arise from the fatal shooting of Leroy Goss in the City of Detroit. He was jointly tried with co-defendant Christopher James, before different juries. The Michigan Court of Appeals summarized the relevant facts adduced at trial as follows:

> The trial took place in July 2004 and was based on the fatal shooting of a man, Leroy Goss, in Detroit. Dacia Robinson, James's former girlfriend, testified as follows: She and James were together at their home on August 2, 2002, when Brown came to the door around 11:00 p.m. Brown arrived in a white, four-door car; a female was in the car and stayed there while Brown exited the vehicle. Brown told James to get a gun because Brown "had got into it with someone on the block." James got the gun, an "AK-47," and the two men headed down an alley. The alley led toward a vacant field, where Robinson could see five or six people gathered; Robinson heard

screaming coming from the area. It sounded to Robinson like Brown and James were arguing with someone, and then Robinson heard one gunshot, followed by four more in quick succession.

Robinson stated that she did not see Brown or James fire a gun but that she saw a person fall to the ground and then saw Brown and James come back towards the house. According to Robinson, James said, "I shot the n--ga," and James and Brown left in the white car after James put the gun in the trunk. . . . She further stated that when she saw James again, she asked him why he had shot the person, and he "just said I shot him." . . .

Camesha Jones testified that she was in the white car with Brown on the evening of August 2, 2002. Jones stated that she and Brown saw about nine or ten people "jumping on" one person and beating him badly, that at some point Brown told the people to stop, and that Brown subsequently left to go to James's house. Jones testified that Brown and James came to the car several minutes later and that James spent a moment near the trunk of the car, which had been opened. Jones stated that she did not see James or Brown holding a gun. According to Jones, the three proceeded to a home on the east side of Detroit, Brown opened the trunk of the car, and James took something from the trunk.

Leroy Goss, the victim's teenaged nephew and namesake, testified as follows: He was playing a game with some friends and relatives on the night in question when a drunk man, Larry Hamilton, came by and said "f--k y'all" to them. Someone went to tell the victim, who was also drunk, about Hamilton, and the victim appeared on the scene. The victim tried telling Hamilton to be more respectful, after which Hamilton stated to the victim, "f--k your kids." The victim then slapped Hamilton, and Goss and the others began beating Hamilton while they were all on the porch of a house near the vacant field. Brown saw the commotion, yelled for them to stop the beating, and stated that he was going to get an AK-47. Goss testified that he and the people with him proceeded to the vacant field, leaving the beaten man behind, and that he then saw Brown, holding a gun, with another person next to him. . . . Goss stated that Brown fired the gun and that he remembered hearing four or five gunshots.

. . . [At trial] Brown's attorney elicited that, in his pretrial statement to the police, Goss stated that he saw Brown with the AK-47 but did not actually see him shoot it.

Piceese Frazier, Goss's teenaged cousin, testified that she witnessed the victim beating Hamilton on the night in question, that she and others joined in the beating, and that Brown swore at them and asked them why they were beating the man. Frazier testified that she saw Brown approach the porch where James was located and say "[h]and me my AK" to James. Brown's attorney elicited on cross-examination that parts of Frazier's pretrial statement to the police were

inconsistent with her trial testimony.

Samantha Staton testified that she heard Hamilton making negative comments on the night in question and that someone told the victim about the comments. Staton indicated that . . . the victim hit Hamilton, and that a number of teenagers then began beating Hamilton. Staton testified that Brown witnessed the beating and told them to stop and that Brown at some point asked James for a gun. According to Staton, Brown ran up to her group when they were in the vacant field and shot an AK-47 "at least eight times." . . .

Daniel Legette, the victim's teenaged son, testified that he went to get his father on the night in question because Hamilton had been harassing him and the people with him. Legette testified that the victim hit Hamilton and that the group then began beating Hamilton. Legette stated that Brown asked them to stop and that, when Legette and the others were in the vacant field, he saw Brown shooting the victim. . . . Brown's attorney elicited that Legette did not identify Brown at a pretrial lineup.

Eugene Fitzhugh, a Detroit police officer, testified that he found numerous shell casings along a street and in the alley near the vacant field and that he also found a knife near a dumpster that is located in the area. Fitzhugh indicated that the casings were from a pistol and not from an AK-47. . . .

Cheryl Loewe, a medical examiner, testified that, according to an autopsy report completed by a colleague, the victim had sustained three gunshot wounds in his abdomen. She also testified that the victim had been intoxicated at the time of his death.

* * *

Brown's statement to police made on February 10, 2004, was read into the record in front of Brown's jury only. In the statement, Brown indicated that he observed the beating on the night in question and asked the beaters to stop. He denied getting a gun or participating in a shooting that night.

*People v. Brown*, No. 257660, slip op. at 2-5 (Mich. Ct. App. Dec. 22, 2005).

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. On August 24, 2004, he was sentenced to 40 to 75 years' imprisonment for the murder

3

conviction, 22 months to 5 years' imprisonment for the felon-in-possession conviction, and 2 years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

> I. The prosecutor committed misconduct and denied defendant a fair trial by violating his duty to produce an endorsed, *res gestae* witness, and the trial court reversibly erred by refusing the give the "missing witness" instruction.
>
> II. Defendant was denied his constitutional right to present a defense and his constitutional right not to testify when the trial court suppressed evidence of the victim's reputation for violence, in part because defendant elected not to testify; in the alternative, defendant was denied his right to effective assistance of counsel.
>
> III. The trial court's erroneous ruling denying defendant's request to call a police officer to impeach an important prosecution witness's testimony denied defendant his constitutional rights to confrontation and a fair trial.
>
> IV. Allowing the prosecution to reopen the proofs at the end of trial to enter the defendant's statement was unduly prejudicial, and denied defendant a fair trial.
>
> V. Defendant must be resentenced where his guidelines were scored inaccurately and his sentence was based on facts not admitted by defendant or found beyond a reasonable doubt by the jury.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Brown*, No. 257660 (Mich. Ct. App. Dec. 22, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Brown*, No. 130339 (Mich. Apr. 28, 2006).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims presented on direct review in state court.

### III. Standard of Review

4

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

5

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

Where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 943. However, the independent review "is not a full, *de novo* review of the claims, but remains deferential

because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

**IV. Analysis**

**A. *Res Gestae* Witness**

In his first claim for habeas corpus relief, Petitioner argues that the prosecutor committed misconduct when he failed to produce Larry Hamilton, a *res gestae* witness, and that the trial court erred in refusing to give a missing witness instruction.

First, the Michigan Court of Appeals denied this claim, finding no evidence that the prosecutor listed Hamilton as a witness he intended to call at trial. Even assuming that the prosecutor listed Hamilton as a witness, a claim that the prosecution failed to produce a *res gestae* witness concerns a perceived error of state law. *See Smith v. Elo*, 1999 WL 1045877 (6th Cir. Nov. 8, 1999). It is well-established that "'federal habeas corpus review does not lie for errors of state law,'" unless the error denies a petitioner fundamental fairness in the trial process. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioner's trial was not rendered fundamentally unfair because a *res gestae* witness was not called. Accordingly, Petitioner is not entitled to habeas corpus relief with respect to this claim.

Petitioner also claims that the trial court erred in failing to give a missing witness instruction regarding Larry Hamilton. An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (1991)*,* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S.

7

637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).

Under Michigan law, the missing witness instruction may be appropriate if the prosecutor fails to produce a witness he has endorsed for trial, Mich. Comp. Laws § 767.40a(3), unless the prosecutor exercised due diligence to produce the witness and the witness's production is excused on that basis. *People v. Perez*, 469 Mich. 415, 420 (2003), *People v. Wolford*, 189 Mich. App. 478, 484 (1991). In this case, the Michigan Court of Appeals held that the prosecution did not list Hamilton as a witness he intended to call at trial. The trial court's decision not to give the requested instruction was held to be in accord with Michigan law. In addition, Petitioner has not shown that the failure to give this instruction rendered his trial fundamentally unfair. Accordingly, habeas relief will be denied on this claim.

### B. Evidence Regarding Victim's Reputation for Violence

In his second claim, Petitioner argues that his right to present a defense was violated when the trial court would not permit him to elicit testimony regarding the victim's reputation for violence and thus his attorney was ineffective for failing to have a strategy to introduce this evidence.

While the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 307 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.*, *citing Rock v. Arkansas*, 483 U.S. 44, 58

8

(1987); *see also Chambers v. Mississippi*, 410 U.S. 283, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result. *Davis v. Alaska*, 415 U.S. 300, 317 (1973). Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), *quoting California v. Trombetta*, 467 U.S. 479, 485 (1984). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-691 (1984), *quoting United States v. Cronic*, 466 U.S. 648, 656 (1984).

The Michigan Court of Appeals held that the trial court did not err in excluding testimony regarding the victim's history of violent crimes. The court of appeals noted that "Michigan Rules of Evidence do not allow a defendant to introduce evidence of a victim's specific acts of violence in order to prove that the victim was the first aggressor in a situation." *Brown*, slip op. at 8. In addition, the court of appeals held that the testimony could not be admitted to show that Petitioner had a reasonable apprehension of harm because there was no evidence to show that Brown knew of the prior violent acts of the victim. *Id.*

Petitioner has failed to show that the trial court's refusal to allow testimony of the victim's prior violent crimes deprived him of a meaningful opportunity to present a defense. He was permitted adequate opportunity to cross-examine witnesses and to present a defense regarding the circumstances of the murder. The trial court's exclusion of the victim's prior violent history did not infringe upon Petitioner's opportunity to subject the prosecution's case to meaningful adversarial testing, particularly where Petitioner failed to show that he was aware of the victim's history. Thus,

the Court concludes that the state court's decision that the trial court acted properly was not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner also claims that his trial attorney was ineffective in failing to present a sound legal strategy to introduce the victim's prior record. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Michigan Court of Appeals held that Petitioner failed to offer any specific legal theory

that should have been advanced by defense counsel to gain the admission of this testimony. The state court concluded that, because the testimony was properly excluded, counsel, therefore, was not ineffective. Because the state court held that the testimony was properly excluded, Petitioner cannot establish that his attorney was ineffective in failing to gain its admission. Thus, the Court finds that the court of appeals' decision was not contrary to or an unreasonable application of *Strickland*.

## C. Confrontation Clause Claim

Petitioner next argues that his right of confrontation was violated when the trial court limited his attempts to impeach the testimony of prosecution witness Piceese Frazier. Frazier testified at trial that, as she and her cousins were beating Hamilton, she saw Petitioner and his co-defendant James across the street inside a parked white car. She also testified that she heard Petitioner ask James to hand him his gun. In a statement given to police sergeant Gardner on the night of the incident, Sergeant Gardner recorded that Frazier was unable to identify the occupants of the white car. At trial, Frazier was questioned about the report and claimed that Sergeant Gardner incorrectly recorded her statement. Petitioner sought to call Sergeant Gardner as a witness to impeach Frazier with her prior inconsistent statement. The trial court denied the motion on the ground that the signed statement served to impeach Frazier's testimony.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.*, at 404-05

11

(internal quotation omitted). The right to a trial by jury is predicated upon the belief "that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel." *Id.* at 405, *quoting Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965).

The Michigan Court of Appeals held that Petitioner's rights were not violated by the trial court's decision not to allow him to call Sergeant Gardner. The state court noted that "the jury was informed that Frazier had signed a document containing a statement differing from her testimony at trial." *Brown*, slip op. at 9. The state court further observed that the two years that had elapsed since Sergeant Gardner took Frazier's statement rendered it highly unlikely that his testimony would provide better impeachment evidence than the contemporaneous, signed statement. *Id.*

The Court finds that Petitioner was permitted adequate opportunity to impeach Frazier and to question her regarding the inconsistency in her testimony. Not being permitted to call Sergeant Gardner as a witness did not infringe upon Petitioner's opportunity to subject the prosecution's case to meaningful adversarial testing. Thus, the Court concludes that the state court's decision that the trial court acted properly was not contrary to or an unreasonable application of Supreme Court precedent.

### D. Allowing Prosecutor to Reopen Proofs

Petitioner argues that the trial court erred in reopening proofs to allow the prosecutor to introduce his statement to police.

As discussed above, "'federal habeas corpus review does not lie for errors of state law,'" unless the error denies a petitioner fundamental fairness in the trial process. *Estelle,* 502 U.S. at 67, *quoting Lewis,* 497 U.S. at 780. In this case, the Michigan Court of Appeals held that the trial court

12

properly permitted the prosecutor to reopen proofs. The court of appeals reasoned, in pertinent part:

> After the prosecutor rested, the trial court decided to allow Brown to argue a "defense of others" theory and decided that it would instruct the jury with regard to that theory. The prosecutor then argued that Brown's police statement should be admitted because in that statement, Brown denied shooting the gun and thereby contradicted the theory that he shot the victim to defend Hamilton. The trial court agreed. . . . Brown's statement was not pertinent for the prosecutor's case until after the court decided to allow the "defense of others" theory into trial. After the court ruled to allow the theory, the statement became pertinent, and the trial court properly allowed it to be admitted.

*Brown,* slip op. at 9.

Petitioner has failed to show that the state court's conclusion was contrary to or an unreasonable application of Supreme Court precedent. Nor has he shown that the trial court's decision denied him his fundamental right to a fair trial. Therefore, habeas relief is denied on this claim.

### E. Sentencing Claims

Petitioner presents two sentencing-related claims. First, he argues that the trial court erred in scoring offense variable 5 (OV5). Second, he claims that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004).

As discussed, "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle*, 502 U.S. at 67 (*quoting Lewis,* 497 U.S. at 780). Petitioner's argument that the state court erred in scoring his sentencing guidelines is based solely on the state court's interpretation of state law. It does not implicate any federal rights. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law."). A claim that a trial

court mis-scored offense variables is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Petitioner also argues that the trial court violated *Blakely v. Washington*, 543 U.S. 296 (2004) in sentencing him based upon facts not admitted by him or submitted to a jury.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Michigan has an indeterminate sentencing system for most crimes, including those for which Petitioner was convicted. The maximum term of imprisonment is set by law. *People v. Drohan*, 475 Mich. 140, 160-61 (2006).

In *Blakely*, 542 U.S. 296 (2004), the Supreme Court addressed indeterminate sentencing systems and held that such systems do not violate the Sixth Amendment. The Court explained:

> [The Sixth Amendment] limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is entitled to no more than a 10-year sentence-and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Id.* at 308-09.

Judicial factfinding may not be used to impose a sentence "beyond the prescribed statutory

14

maximum." *Apprendi*, 530 U.S. at 490. In this case, the sentencing court did not exceed the statutory maximum for Petitioner's crimes. Therefore, the sentencing scheme did not run afoul of the Sixth Amendment. Because *Blakely* does not apply to indeterminate sentencing schemes like the one utilized in Michigan, the trial court's sentence did not violate the petitioner's constitutional rights. *See Tironi v. Birkett*, No. 06-1557, 2007 WL 3226198, * 1 (6th Cir. Oct. 26, 2007) ("*Blakely* does not apply to Michigan's indeterminate sentencing scheme."); *Minner v. Vasbinder*, 2007 WL 1469419, * 4 (E.D. Mich. May 21, 2007); *Chatman v. Lafler*, 2007 WL 1308677, *2 (E.D. Mich. May 3, 2007); *Jones v. Bergh*, 2006 WL 1007602, *1-2 (E.D. Mich. April 17, 2006); *George v. Burt*, 2006 WL 156396, *5 (E.D. Mich. Jan. 20, 2006); *Walton v. McKee*, 2005 WL 1343060, *3 (E.D. Mich. June 1, 2005). Habeas relief, therefore, is denied.

## V. Certificate of Appealability

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002). In denying the habeas petition, the Court has carefully reviewed the petition, the state court record, and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See id.* at 901, (*quoting Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir.1997)), overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.).

A certificate of appealability may be issued "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not present a claim upon which habeas relief may be warranted. Therefore, the Court denies a certificate of appealability.

## VI. Conclusion

Petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: December 11, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record

by electronic or U.S. mail on December 11, 2008.

                                              s/Marie E. Verlinde
                                              Case Manager
                                              (810) 984-3290